UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:04CR 213 JCH |
| | ) | |
| EDDIE TAYLOR, JR., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### Procedural Background

On December 16, 2004, the grand jury indicted the defendant charging two counts: Count I - Distribution of Cocaine on September 8, 2004; and Count II - Attempt to Manufacture Five Grams or More of Methamphetamine on December 7, 2004 (Document #8).

On March 10, 2005, a Superseding Indictment (Document #47) was filed containing Counts I and II from the original Indictment and charging two more counts. Count I of the original Indictment remained Count I of the Superseding Indictment. Count II of the original Indictment became Count III of the Superseding Indictment except that in the original Indictment it charged the Attempt to Manufacture 5 Grams or More of Methamphetamine, whereas in the Superseding Indictment Count III charges the Attempt to Manufacture 50 Grams or More of Methamphetamine. Count II of the Superseding Indictment charges the Possession of Pseudoephedrine on December 7, 2004, With Intent to Manufacture

Methamphetamine. Count IV of the Superseding Indictment charges Eddie Taylor, Jr., with being a Felon in Possession of Ammunition on December 7, 2004.

Arraignment on the Superseding Indictment took place on March 16, 2005. The defendant requested and was granted two weeks to file any pretrial motions concerning the charges in the Superseding Indictment (Document #54).

On March 30, 2005, the defendant, through his attorney, filed Motion for Transfer of Venue (Document #57) and Motion for Relief from Prejudicial Joinder (Document #58). The government was given until April 8, 2005, to file its responses to the defendant's motions. The court's order also contained the statement that after completion of the government's time for filing responses, defendant's motions would be set for hearing. The government filed its Responses to the defendant's motions.

During a conference call between the court and the parties on April 13, 2005, defendant's attorney informed the court that he did not need a hearing on his motions.

The court has found the memoranda filed by the parties significantly helpful to the court in reaching its determination in this case.

### **Motion for Transfer of Venue**

The defendant has filed his Motion for Transfer of Venue (Document #57) seeking an order transferring venue in the above matter to the St. Louis, Missouri, Division of the Eastern District of Missouri. As grounds the defendant states in his motion:

> 1. That the defendant states that there exists a prejudice against the defendant in the pending division of the district.

2. That the defendant states that the prejudice against him is due to pretrial publicity concerning the defendant thereby making it impossible for the defendant to obtain a fair and impartial trial in this division of the district.

3. That the defendant further states that there is community hostility toward him thereby also making it impossible for defendant to obtain a fair and impartial trial in the pending division of the district.

The government has filed its Response.

In <u>United States v. Glaze</u>, 866 F.2d 253 (8th Cir. 1989), the defendant had been indicted for Social Security fraud. He was convicted of that charge by a jury in the United States District Court for the District of Minnesota. When discussing jury prejudice in its opinion, the Court of Appeals for the Eighth Circuit related that while he was awaiting trial Glaze became the chief suspect

> in a series of gruesome homicides of American Indian women. A front page article appeared in a Minnesota paper called the <u>City Pages</u> entitled "Bad Blood" in which Glaze's connection with the murders was discussed. KARE television aired twenty-five different news stories on a continuous basis referring to Glaze as a suspect. WCCO-TV ran twenty-six stories, some of which were shown as many as twelve times. KSTP aired similar stories. The <u>Star Tribune</u> ran periodic articles including a front page story on April 1, 1988. Other papers ran front page stories.

<u>Id</u>. at 254. The defendant's motion for change of venue was denied by the trial court. The trial court's denial of the motion for change of venue was affirmed on appeal. The affirmance of the denial of the change of venue was attributed to the questioning by the judge at voir dire concerning any possible jury prejudice. If during that questioning he found any potential jurors showing prejudice, they were dismissed. Thus, the determination of

impartiality of the members of the jury panel was made at voir dire. The court found that "the question is whether the jurors had such fixed opinions at the time of trial that they could not be impartial judges of the defendant's guilt. Patton v. Yount, 467 U.S. 1025, 1035, 104 S.Ct. 2885, 2890-91 (1984); Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642-43 (1961)." Id.

As early as 1981, the Eighth Circuit said "This court has repeatedly held that it is preferable to await voir dire before ruling upon motions for change of venue." United States v. Poludniak, 657 F.2d 948, 955 (8th Cir. 1981 cert. denied).

In United States v. Bliss, 735 F.2d 294 (8th Cir. 1984), "Virtually all of the venire men admit[ted] to some knowledge of the defendant due to pretrial publicity." Id. at 298. (Those who are old enough to remember will recall the name of Russell Bliss, who sprayed dioxin-contaminated oil on streets and horse arenas in Eastern Missouri.) The Bliss court, in denying Bliss's motion for change of venue, quoted from United States v. Brown, 540 F.2d 364, 378, to provide the rationale for its position:

> Mere exposure to publicity or the formation of tentative impression by some jurors is not enough to require a change of venue. The ultimate test is whether a juror has been exposed to pre-trial publicity and, if so, whether he or she can set aside any impression or opinion resulting from that exposure and render a verdict based solely on the evidence presented at trial.

This test cannot be performed until a jury panel is questioned. See also Swindler v. Lockhart, 885 F.2d 1342, 1347-48 (8th Cir. cert. denied (1989)); United States v. Faul, 748 F.2d 1204, 1212 (8th Cir. cert. denied (1984)).

The defendant has shown no information or evidence that there is any bias or hostility

toward him in the community as a result of pretrial publicity. He has made no showing at this time that there are any grounds requiring a change of venue in order that the defendant may be assured a fair trial.

The court will recommend that defendant's Motion for Transfer of Venue be denied without prejudice so that the motion could be renewed at or after voir dire during the trial should appropriate grounds for such a motion arise at that time.

## **Motion for Relief from Prejudicial Joinder**

As noted above, on March 10, 2005, a Superseding Indictment (Document #47) was filed containing Counts I and II from the original Indictment and charging two more counts. Count I of the original Indictment remained Count I of the Superseding Indictment. Count II of the original Indictment became Count III of the Superseding Indictment except for the increase in the amount of methamphetamine the defendant was charged with attempting to manufacture. A new count, which was listed as Count II in the Superseding Indictment, charges the defendant with possessing pseudoephedrine with intent to manufacture methamphetamine on December 7, 2004. Count IV of the Superseding Indictment charges the defendant with possessing on December 7, 2004, ammunition after having previously been convicted of felonies.

Previously, the defendant had filed a Motion for Relief from Prejudicial Joinder (Document #42) arguing that Counts I and II of the original Indictment should not have been joined since, the defendant argued, the offenses were not of the same or similar character nor were they based on two or more acts that were part of the same transaction nor were they

connected so as to constitute parts of a common scheme or plan. This court has recommended by Report and Recommendation that the defendant's Motion for Relief from Prejudicial Joinder (Document #42) be denied. The court found that the two counts, Distribution of Cocaine on September 8, 2004, and Attempting to Manufacture Methamphetamine on December 7, 2004, were "of the same or similar character," that is, steps in drug trafficking. The defendant, in his post-hearing memorandum at page 2, admitted that Counts I and II may be of similar character. The court found they were and that they "occurred over a relatively short period of time." The court additionally finds the two occurrences were part of "a common scheme or plan," Fed.R.Crim.P. 8(a), that is, drug trafficking.

With reference to the pending Motion for Relief from Prejudicial Joinder (Document #58), filed after the Superseding Indictment was handed down, the court will treat the new counts, Count II and Count IV, separately.

Count II of the Superseding Indictment alleges that on December 7, 2004, the defendant knowingly possessed pseudoephedrine with intent to manufacture methamphetamine. All of the crimes the defendant is charged with are alleged to have occurred in Pemiscot County, Missouri, in the Eastern District of Missouri. Count II of the Superseding Indictment (Document #47), Possession of Pseudoephedrine With Intent to Manufacture Methamphetamine, is alleged to have occurred on the same date as Count III (Count II of the original Indictment), Attempting to Manufacture 50 Grams or More of Methamphetamine. The court found in its earlier Report and Recommendation that Count

II of the original Indictment was properly joined with Count I of the original Indictment. The new count which occurred on the same date as Count III of the Superseding Indictment (Count II of the original Indictment) reinforces the propriety of that earlier joinder in the original Indictment in that it shows one more instance of a pattern of criminal behavior, namely, trafficking in illegal drugs. It is difficult to imagine any two courses of action or behavior more closely connected than Count II, possession of an ingredient used in the manufacture of methamphetamine, with Count III, the attempt to manufacture 50 grams or more of methamphetamine. Count II, as explained in Government's Response to Defendant's Motion for Relief from Prejudicial Joinder (Document #62), relates solely to the pseudoephedrine pills found in the defendant's vehicle on December 7, 2004, at the time he was arrested while away from his residence. The government's response continues that at the time of his arrest Eddie Taylor, Jr. was in possession of a quantity of methamphetamine. The law enforcement officers also found "virtually all of the ingredients for the manufacturing of methamphetamine and, in particular, they discovered 1,530 pseudoephedrine tablets." As the government's response further relates, the tablets found were consistent with the empty packages located at the time the officers sought to execute the arrest warrant at the defendant's home. (Government's Response at 2). The facts of this case demonstrate how closely Counts II and III of the Superseding Indictment are connected.

The defendant objects to the joinder in the Superseding Indictment of Count II, knowingly possessing pseudoephedrine with the intent to manufacture methamphetamine, and Count IV, being a felon in possession of ammunition and their joinder to Counts I and

III just referred to. The court has found the joinder of Count II to Counts I and III is proper.

With respect to Count IV, defendant's possession of ammunition after he had been convicted of felonies, the cases are replete with comments showing the connection between weapons and drug trafficking. The Eighth Circuit in <u>United States v. Chaidez</u>, 906 F.2d 377, 384 (8th Cir. 1990), found "... guns are considered essential tools of the drug trade." The <u>Chaidez</u> Court cited <u>United States v. Matra</u>, 841 F.2d 837, 842 (8th Cir. 1988) (discussing the connection between drug transactions and weapons). In this connection, the Eighth Circuit referred further to <u>United States v. Salas</u>, 879 F.2d 530, 535 (9th Cir.), <u>cert. denied</u>, ___ U.S. ___, 110 S.Ct. 507, 107 L.Ed.2d 509 (1989); <u>United States v. Gilliard</u>, 847 F.2d 21, 25 (1st Cir. 1988), <u>cert. denied</u>, ___ U.S. ___, 109 S.Ct. 846, 102 L.Ed.2d 978 (1989); <u>United States v. Trullo</u>, 809 F.2d 108, 113 (1st Cir.), <u>cert. denied</u>, 482 U.S. 916, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987). In <u>United States v. McMurray</u>, 34 F.3d 1405, 1410 (8th Cir. 1994), the Court found that the officers' suspicion that McMurray was dealing drugs provided an adequate basis for the officers to reasonably believe he might be armed and dangerous because "'weapons and violence are frequently associated with drug transactions.' <u>United States v. Brown</u>, 913 F.2d 570, 572 (8th Cir. 1990)."

Finally, in <u>United States v. Boyd</u>, 180 F.3d 967, 982 (8th Cir. 1999), the Court of Appeals for the Eighth Circuit found "evidence of gun possession is relevant to proving Boyd knowingly possessed the cocaine with intent to distribute it." The Court further found "It is, therefore, 'reasonable to assume that the firearm[s] could have been used as a vital part of a plan to possess and distribute drugs.' <u>United States v. Gorecki</u>, 813 F.2d 40, 42 (3rd Cir.

1987) (drugs and weapons connected temporarily and logically).  In fact, this court has long recognized the existence of relationship between narcotics dealing and firearms.  See also United States v. Milham, 590 F.2d 717, 721 (8th Cir. 1979)."  Id.

Besides the theoretical connection recited so often in the cases between trafficking in drugs and the possession of firearms, the facts of this case show the practical connection between drugs and weapons.  In the Government's Response to Defendant's Motion for Relief from Prejudicial Joinder (Document #62 at 1) under the section entitled FACTS, the government states that on December 7, 2004, at the defendant's residence, officers observed in plain view drug trafficking items, a digital scale, 15 plastic baggies and 27 pseudoephedrine boxes, along with 15 rounds of ammunition.

This court finds that the joinder of Counts II and IV, the new counts of the Superseding Indictment, are properly joined to Counts I and III (the counts of the original Indictment) and that the defendant's Motion for Relief from Prejudicial Joinder (Document #58) should be denied.

**IT IS, THEREFORE, RECOMMENDED** that defendant's Motion for Transfer of Venue (Document #57) be denied without prejudice.

**IT IS FURTHER RECOMMENDED** that  defendant's Motion for Relief from Prejudicial Joinder (Document #58) be denied.

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(l), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

_____
LEWIS M. BLANTON
United States Magistrate Judge

Dated: April 28, 2005